IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION
as receiver for
The Buckhead Community Bank,

    Plaintiff,

     v.

    CIVIL ACTION FILE
    NO. 1:12-CV-4156-TWT

R. CHARLES LOUDERMILK, SR., et
al.,

    Defendants.

OPINION AND ORDER

The Federal Deposit Insurance Corporation, acting as receiver for the Buckhead Community Bank, claims that former officers and directors of the bank were negligent and grossly negligent in their management of the bank's loan portfolio, leading to the bank's failure.  The Defendants seek to dismiss the claims.  They argue that, in Georgia, the business judgment rule precludes ordinary negligence claims against officers and directors of a bank as a matter of law.  The Court is not convinced that the business judgment rule in Georgia should be applied to bank officers and directors, and is not convinced that Georgia law is settled on the issue.  Accordingly, the Court

will deny the Defendants' motion to dismiss and certify the question of the applicability of the business judgment rule to the Supreme Court of Georgia.

## I. Background

In 2005, the Buckhead Community Bank (the "Bank") began to implement a new, aggressive growth strategy. The Defendants, R. Charles Loudermilk, Sr., Hugh C. Aldredge, David B. Allman, Marvin Cosgray, Louis J. Douglass III, Gregory W. Holden, John D. Margeson, Larry P. Martindale, and Darryl L. Overall, served on the Bank's Loan Committee and oversaw the aggressive growth strategy. Pursuant to the strategy, the Bank opened three new branches and expanded its loan portfolio. (Am. Compl. ¶¶ 2-4, 23).

The Loan Committee actively pursued commercial real estate ("CRE") and acquisition, development, and construction ("ADC") loans in expanding the Bank's loan portfolio. According to the FDIC, the Loan Committee took unreasonable risks and violated Bank policy by approving speculative loans without adequate information. The Loan Committee also participated in loan purchases from other banks without independently reviewing the loans, again in contravention of Bank policy. (Id. ¶¶ 2-4, 25, 43-44).

The Loan Committee's new strategy was ultimately a total failure. From 2005 to 2007, the Bank's loan portfolio increased 240%, mostly from gains in its high-risk

real estate and construction loans.  At the same time, however, the Bank's adversely classified assets went from accounting for 12.62 percent of tier 1 capital to 236 percent of tier 1 capital.  (Id. at ¶ 32).  The changes in the Bank's loan portfolio brought the ire of regulators, and the Bank was repeatedly warned about its excessive concentrations in high-risk loans and about its poor underwriting and credit administration policies.  (Id. at ¶ 37).  On December 4, 2009, the Bank failed, the Georgia Department of Banking and Finance ("GDBF") closed it, and the FDIC took over as receiver.  (Id. at ¶ 11).[1]

The FDIC contends that the Defendants – nine former officers and directors of the Bank – were negligent and grossly negligent "in their numerous, repeated, and obvious breaches and violations of the Bank's Loan Policy, underwriting requirements, banking regulations, and prudent and sound banking practices."  (Id. at ¶ 5).  The FDIC's amended complaint details twelve representative loan transactions that it contends were improperly approved or renewed by the Loan Committee (the "Loss Loans").  The FDIC contends these Loss Loans caused damage to the Bank in excess of $21.8 million.  The Defendants contend they were not negligent and suggest that the FDIC is simply seeking to recover for losses caused by the recent and

---

[1] As receiver, the FDIC succeeded to all rights and privileges of the Bank, including claims against former directors and officers for negligence and gross negligence.  See 12 U.S.C. § 1821(d)(2)(A)(i).

unanticipated financial crisis.  Further, they argue that bank directors and officers
cannot be held liable for ordinary negligence under Georgia's business judgment rule.

## II.  Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that
the facts alleged fail to state a "plausible" claim for relief.  Ashcroft v. Iqbal, 129 S.Ct.
1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion to
dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff
would be able to prove those facts; even if the possibility of recovery is extremely
"remote and unlikely."  Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).  In
ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint
as true and construe them in the light most favorable to the plaintiff.  See Quality
Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711
F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry
and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading
stage, the plaintiff "receives the benefit of imagination").  Generally, notice pleading
is all that is required for a valid complaint.  See Lombard's, Inc. v. Prince Mfg., Inc.,
753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice
pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim

and the grounds upon which it rests.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007)

(citing Twombly, 127 S.Ct. at 1964).

## III.  Discussion

### A.    Judicially Noticed Facts

In their motion to dismiss, the Defendants ask the Court to judicially notice

certain facts they claim are omitted from the amended complaint.  The Court "may

judicially notice a fact that is not subject to reasonable dispute because it: (1) is

generally known within the trial court's territorial jurisdiction; or (2) can be accurately

and readily determined from sources whose accuracy cannot reasonably be

questioned."  Fed. R. Evid. 201(b).  The Defendants seek judicial notice of the Reports

of Examination issued by the FDIC and the GDBF from 2005 through 2009.  These

reports purportedly show that the FDIC and the GDBF gave favorable reports to the

Bank until at least 2008.

The Court concludes these reports are not appropriate for judicial notice at this

stage of the litigation.  First, in general, matters outside the pleadings should not be

considered in a motion to dismiss without first converting the motion to a motion for

summary judgment.  See Fed. R. Civ. P. 12(d).  Second, the Defendants' contention

that the Eleventh Circuit has endorsed taking judicial notice of facts without

converting a motion to dismiss into a motion for summary judgment in a case like this

one is without merit.  The case they rely on is a securities fraud case which only made the limited determination that a district court may take judicial notice of "relevant public documents required to be filed with the SEC, and actually filed."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1277-78 (11th Cir. 1999).  The Reports of Examination here are not public documents required to be filed with the SEC and this is not a securities fraud case.  Accordingly, the Defendants have not shown that these reports should be judicially noticed.  In sum, "Defendants essentially urge this court to judicially notice certain facts they contend rebut the allegations that they were negligent and/or grossly negligent.  But it is not for the court to weigh those facts against the allegations of the complaint and determine, as a matter of law, whether Defendants breached the standard of care required under Georgia law."  FDIC v. Adams, No 1:12-cv-00726-JOF, Doc. 34, at 7-8 (N.D. Ga. Mar. 21, 2013).

      B.    The Business Judgment Rule and the Plaintiff's Claim for Negligence

According to the Financial Institutions Reform, Recovery, and Enforcement Act, "[a] director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of [the FDIC as receiver] for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and

determined under applicable State law."  12 U.S.C. § 1821(k).  According to the Supreme Court, "the statute's 'gross negligence' standard provides only a floor – a guarantee that officers and directors must meet at least a gross negligence standard. It does not stand in the way of a stricter standard that the laws of some States provide."  Atherton v. FDIC, 519 U.S. 213, 227 (1997).

In Georgia, "[d]irectors and officers of a bank or trust company shall discharge the duties of their respective positions in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like positions."  O.C.G.A. § 7-1-490(a).  Georgia thus holds bank directors and officers to an ordinary negligence standard of care.  See FDIC v. Skow, No. 1:11-cv-0111-SCJ, 2012 WL 8503168, at *6 (N.D. Ga. Feb. 27, 2012) (reading O.C.G.A. § 7-1-490(a) to allow claims for ordinary negligence against bank directors and officers).  The Defendants claim that, despite this statute, Georgia's business judgment rule precludes any liability for negligence as a matter of law.

In Brock Built, LLC v. Blake, 300 Ga. App. 816 (2009), the  Georgia Court of Appeals held:

> The business judgment rule protects ... officers from liability when they make good faith business decisions in an informed and deliberate manner. The presumption is that they have acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Unless this presumption is rebutted, they cannot be held personally liable for managerial decisions. However,

officers may be held liable where they engage in fraud, bad faith, or an
abuse of discretion.

Id. at 822 (citing TSG Water Resources v. D'Alba & Donovan Certified Public
Accountants, 260 Fed. Appx. 191, 197 (11th Cir. 2007)).  "Allegations amounting to
mere negligence, carelessness, or 'lackadaisical performance' are insufficient as a
matter of law." Id. (citing Medserv Corp. v. Nemnom, 1997 U.S. Dist. LEXIS 18246,
at *9 (N.D. Ga. 1997)); see also Flexible Products Co. v. Ervast, 284 Ga. App. 178,
182 (2007) (stating that the business judgment rule in Georgia "forecloses liability in
officers and directors for ordinary negligence in discharging their duties.").  None of
these cases involved bank officers and directors subject to O.C.G.A. § 7-1-490(a).
Although the Court of Appeals has held that in general the business judgment rule
precludes claims for ordinary negligence against the officers and directors of a
corporation, no Georgia state court has explicitly extended the business judgment rule
to protect the officers and directors of a bank being sued by the FDIC as receiver.

Federal courts in this district, however, have uniformly applied the business
judgment rule to protect bank officers and directors.  In FDIC v. Blackwell, No. 1:11-
cv-03423-RWS, 2012 WL 3230490 (N.D. Ga. Aug. 3, 2012), Judge Story ruled that
the business judgment rule precluded any claim for negligence against bank officers.
The FDIC alleged that the defendants failed to adhere to sound lending practices,
failed to follow the bank's lending policies, disregarded the advice of regulators,

should have been aware of the weaknesses in underwriting practices, should have been aware that CRE and ADC loans were having an adverse impact on the bank's soundness, and should have been aware of the deficiencies in a series of loans that lost a great deal for the bank after they were approved.  Despite these allegations, the court concluded that "the FDIC's negligence claim is foreclosed by the business judgment rule and therefore fails as a matter of law."  Id. at *3-4.  The other judges in this district have generally reached the same conclusion.  See FDIC v. Skow, No. 1:11-cv-00111-SCJ, 2012 WL 8503178, at *9 (N.D. Ga. Aug. 14, 2012) (concluding on motion for reconsideration that "it appears that when Georgia's business judgment rule is applied to claims for ordinary negligence, Georgia courts hold that such claims are not viable.")[2]; FDIC v. Briscoe, No. 1:11-cv-02303-SCJ, 2012 WL 8302215, at *4-5 (N.D. Ga. Aug. 14, 2012) ("[W]hen Georgia's business judgment rule is applied to claims for ordinary negligence, Georgia courts hold that such claims are not viable."); FDIC v. Miller, No. 2:12-cv-42-WCO, Doc. 20, at 8 (N.D. Ga. Dec. 26, 2012) ("[T]he court finds that plaintiff's claims based on ordinary negligence are foreclosed by the [business judgment rule] and fail as a matter of law.").  Judge

---

[2] Judge Jones also granted an interlocutory appeal under 28 U.S.C. § 1292(b) concerning "whether a court-created business judgment presumption can repeal the statutory standard of care and transform it from ordinary negligence into gross negligence."  See FDIC v. Miller, No. 2:12-cv-42-WCO, Doc. 20, at 8 n.5 (N.D. Ga. Dec. 26, 2012) (citing Skow, 2012 WL 8503178, at *21).

Forrester applied the business judgment rule to bank officers but did not hold that the FDIC's claim for negligence was foreclosed as a matter of law, concluding instead that the FDIC's allegations overcame the protections of the rule. See FDIC v. Adams, No. 1:12-cv-00726-JOF, Doc. 34, at 13 (N.D. Ga. Mar. 21, 2013) (concluding that allegations that "paint a picture of Defendants failing to implement any safeguards and ignoring the ones actually put in to place so that they could pursue a rapid growth strategy and accumulate large profits in a short period of time" overcome the business judgment rule for ordinary negligence claims).

I most respectfully disagree with my able and learned friends and colleagues. There is every reason to treat bank officers and directors differently from general corporate officers and directors. In general, when a business corporation succeeds or fails, its stockholders bear the gains and losses. The business judgment rule is primarily applied in Georgia *because* "the right to control the affairs of a corporation is vested by law in its stockholders - those whose pecuniary gain is dependent upon its successful management." Regenstein v. J. Regenstein Co., 213 Ga. 157, 159 (1957). But when a bank, instead of a business corporation fails, the FDIC and ultimately the taxpayer bear the pecuniary loss. The lack of care of the officers and directors of banks can lead to bank closures which echo throughout the local and national economy. To some extent, the failure of bank officers and directors to

exercise ordinary diligence led to the very financial crisis that continues to affect the national economy.  By all accounts, the loose lending practices alleged by the FDIC in this case were rampant within Georgia's community banks.  Further, the Georgia legislature, in passing O.C.G.A. § 7-1-490, explicitly stated that "[d]irectors and officers of a bank or trust company shall discharge the duties of their respective positions in good faith and with that diligence, care, and skill which ordinary prudent men would exercise under similar circumstances in like positions."  Finally, this is not a case where shareholders are suing their own officers and directors, but instead it is a case where the FDIC as receiver is seeking damages following allegedly negligent banking practices.  A case with the FDIC as receiver "is not simply a private case between individuals [but rather a case that] involves a federal agency appointed as a receiver of a failed bank in the midst of a national banking crisis." FDIC v. Wright, 942 F.2d 1089, 1096 (7th Cir. 1991) (noting when considering retroactivity that the FDIC as receiver not a normal plaintiff).  The Court is not convinced that Georgia law affords the Defendants the protection of the business judgment rule in a lawsuit by the FDIC.

The Court notes there are no clear controlling precedents on this issue by the Supreme Court of Georgia.  The closest precedent comes from Mobley v. Russell, 174 Ga. 843 (1932), where the court considered an appeal following a jury verdict in favor

of the officers and directors of a failed bank in a suit brought by the superintendent of banks.   The court stated "[t]he mere exercise by directors of poor judgment in making loans is not sufficient to form a basis of liability; for the directors merely assume the obligations to manage the affairs of the institution with diligence and good faith."  This statement does not clearly lay out the business judgment rule and apply it to bank officers and directors.  At the outset, it is unclear if the language "diligence and good faith" even represents a standard of care higher than that of ordinary negligence.  O.C.G.A. § 7-1-490 itself uses the terms "diligence" and "good faith" when laying out the ordinary negligence standard of care applicable to bank officers and directors.  See O.C.G.A. § 7-1-490.  But further, the court's statement was made in part to affirm a jury finding that the defendants were not negligent, without any indication that the jury should not have considered the claim.  Outside this single statement, the case does not discuss anything resembling the business judgment rule. Mobley therefore does not provide a clear, controlling precedent on this issue.  Given the uncertainty surrounding the application of the business judgment rule to bank officers and directors, the Court will certify to the Supreme Court of Georgia the unsettled question of law of whether the business judgment rule should supplant the standard of care required of bank officers and directors by O.C.G.A. § 7-1-490 in a suit brought by the FDIC as receiver.  See O.C.G.A. § 15-2-9.

At this stage of the litigation, I will not apply the business judgment rule to the FDIC's ordinary negligence claim.  To succeed on a claim for negligence, the Plaintiff must show:

> (1) A duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.  (2) A failure on his part to conform to the standard required... (3) A reasonable close causal connection between the conduct and the resulting injury... [and] (4) Actual loss or damage resulting to the interests of the other.

Lau's Corp. v. Haskins, 261 Ga. 491, 492 (1991) (citing Sutter v. Hutchings, 254 Ga. 194, 196-97 (1985)).  Here, the Plaintiff has set forth numerous allegations indicating the Defendants failed to exercise even slight diligence when acting as directors and officers of the Bank.  For instance, the Bank's concentration of ADC loans as a percentage of total capital far exceeded the percentage of ADC loans held by the Bank's peer institutions.  At the end of 2007, the Bank's ADC loans as a percentage of total capital reached 494% compared to the peer average of 124%, and at the end of 2009 the Bank's percentage of total capital held in ADC loans was 1,870 percent while the peer average was 92 percent.  (Am. Compl. ¶ 33).  The Defendants continued to approve loans in CRE and ADC areas despite being aware of a decline in housing sales and despite Bank policies mandating increased diversification.  (Id. at ¶¶ 34-35).  They also ignored the criticisms of examiners who flagged the Bank for "excessive concentration in ADC loans, approving loans that exceeded acceptable

loan-to-value ("LTV") ratios, failing to sufficiently monitor outstanding loans, maintaining lax underwriting practices and inadequate loan administration, and marked increases in the Bank's adversely classified assets." (Id. at ¶ 37). These risky assets led to the Bank's ultimate crash, and led to the losses incurred by the FDIC. Accordingly, the Plaintiff has alleged sufficient facts to state a claim for negligence on the part of the Defendants, and the Defendants' motion to dismiss should be denied.

C.    The Plaintiff's Claim for Gross Negligence

The Defendants argue that the Plaintiff has not provided sufficient allegations to maintain its claim for gross negligence under the Financial Institutions Reform, Recovery, and Enforcement Act.  As noted, "a director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of [the FDIC as receiver] for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law."  12 U.S.C. § 1821(k).  In Georgia, the "absence of [slight diligence] is termed gross negligence." O.C.G.A. § 51-1-4. "[S]light diligence is that degree of care which every man of common sense, however inattentive he may be, exercises under the same or

similar circumstances." Id.; see also Morgan v. Horton, 308 Ga. App. 192, 197-98 (2011).  "[W]hether conduct alleged amounts to gross negligence is, as a general rule, a question to be resolved by the jury and not by the Court as a matter of law." Blackwell, 2012 WL 3230490, at *5 (quoting Morgan, 308 Ga. App. at 197).

Here, the Plaintiff has set forth numerous allegations indicating the Defendants failed to maintain even slight diligence when acting as directors and officers of the Bank.  As noted above, the Defendants failed to maintain appropriate ratios of speculative loans and low-risk loans, failed to adhere to internal policies, and failed to heed the warnings of regulators leading to the losses for which the FDIC is trying to recover.

The FDIC has detailed twelve specific Loss Loans that hurt the Bank.  One loan, identified in the amended complaint as THP, LLC, was recommended by Defendant Holden and approved by Defendants Aldredge, Cosgray, Douglass, Martindale, and Overall on December 20, 2005.  According to the allegations, the Bank purchased 73% of the loan, which was for the development of residential lots in Clayton County, Georgia, as a participant, not an originator of the loan. The Defendants failed to analyze the loan as if the Bank had originated the loan itself, which the Bank's loan policy required.  The Defendants did not obtain credit reports or financial statements for the borrowers and guarantors on the loan, again as the

Bank's loan policy required.  The Defendants renewed the Bank's participation in the loan in 2007 without financial statements prepared by a certified public accountant. Finally, Defendants Aldredge, Margeson, and Allman approved of renewing the loan without an updated appraisal of the loan.  (Am. Compl. ¶¶ 45-47).  The allegations state that the Defendants similarly failed to exercise even slight diligence in approving the eleven other Loss Loans.

In Skow, the court concluded that the plaintiff had provided sufficient allegations to move beyond the motion to dismiss stage on its gross negligence claims. "Example allegations which support this finding are Plaintiff's allegations that Defendants deliberately pursued a speculative, high-growth lending strategy, the risks of which were compounded by their failure to implement sound lending practices or to exercise appropriate oversight over loan officers and the lending function." FDIC v. Skow, No. 1:11-cv-0111-SCJ, 2012 WL 8503168, at *12 (N.D. Ga. Feb. 27, 2012). These practices led to "chronic underwriting deficiencies that should have been apparent to Defendants, and that were in fact the subject of repeated warnings by state and federal regulators." Id. at 12-13.  The defendants had failed to take corrective actions, and repeatedly violated Georgia lending laws.   The court ruled that a reasonable jury could find the defendants grossly negligent for this conduct. Id. at 13; see also FDIC v. Adams, No 1:12-cv-00726-JOF, Doc. 34, at 16 (N.D. Ga. Mar. 21,

2013) (allowing claims for gross negligence to proceed based on allegations that bank directors and officers "(1) failed to inform themselves of many material facts when evaluating and approving the Loss Loans; and (2) disregarded and ignored established procedures for loan approval in that the Loss Loans contained multiple, readily-apparent violations of the Bank's Loan Policy."); <u>FDIC v. Miller</u>, No. 2:12-cv-42-WCO, Doc. 20, at 20 (N.D. Ga. Dec. 26, 2012) (holding that allegations that defendant bank officers ignored bank procedures and relied on improperly prepared loan appraisals in approving high-risk loans could sustain a claim for gross negligence).

Here, too, a reasonable jury could find the Defendants grossly negligent based on the allegations in the amended complaint.  The alleged facts show an ongoing tendency to ignore risks while taking on loans that were flagged by regulators. Similarly, the allegations suggest that the Defendants invested the Bank's loan portfolio in a manner far more aggressive than banks in their peer group. Additionally, the Defendants failed to adhere to procedures that would have identified the deficiencies in the loans, including internal policies concerning diversification and inspection.  The Defendants approved loans based on old or incomplete or uncertified appraisals.  The allegations of such disregard of care and procedures are sufficient for

a reasonable jury to conclude that the Defendants were grossly negligent in their management of the Bank.

The Defendants ask the Court to order the FDIC to replead its allegations of gross negligence to specify each individual Defendant's involvement in the loans at issue. However, the amended complaint already details the individual involvement of each Defendant in the twelve Loss Loans. For example, the ABC, LLC loan was recommended by Defendant Holden, and approved by Defendants Aldredge, Allman, Cosgray, Douglass, Margeson, and Martindale in 2006. (Am. Compl. ¶ 53). The BI, LLC loan purchase was recommended by Holden, and was approved by Aldredge, Cosgray, Douglass, Margeson, and Overall in 2007. (Id. at ¶ 76). The HT 32, LLC loan was approved by Aldredge, Cosgray, Douglass, Loudermilk, Margeson, and Overall in 2008. (Id. at ¶ 92). Accordingly, the Defendants' motion to dismiss should be denied with respect to the Plaintiff's claim for gross negligence.

## IV.  Conclusion

For the reasons set forth above, the Defendants' Motion to Dismiss [Doc. 15] is DENIED without prejudice. The Plaintiff's Motion for Oral Argument [Doc. 23] is DENIED. The Court will certify the  issue of unsettled law to the Supreme Court of Georgia by separate order.

SO ORDERED, this 22 day of November, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge