[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  16-17315
_____

D.C. Docket No. 1:12-cv-04156-TWT

FEDERAL DEPOSIT INSURANCE CORPORATION,
as receiver for the Buckhead Community Bank,

Plaintiff – Appellee,

versus

R. CHARLES LOUDERMILK, SR.,
HUGH C. ALDREDGE,
DAVID B. ALLMAN,
MARVIN COSGRAY,
LOUIS J. DOUGLASS, III,
GREGORY W. HOLDEN,
LARRY P. MARTINDALE,
DARRYL L. OVERALL,

Defendants – Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 22, 2019)

Before TJOFLAT, MARTIN, and ANDERSON, Circuit Judges.

TJOFLAT, Circuit Judge:

The directors of Buckhead Community Bank wanted to make Buckhead a "billion dollar bank." So, they set out to execute an aggressive growth strategy. To implement the growth strategy, the directors expanded the Bank's loan portfolio. Many of these loans failed, costing the Bank millions. In late 2009, the Georgia Department of Banking and Finance closed the Bank, and the Federal Deposit Insurance Corporation was appointed as the Bank's receiver.

As receiver, the FDIC sued several of the Bank's former directors and officers. (We will refer to them as "the directors" for convenience.) The FDIC alleged the directors were negligent and grossly negligent in approving ten risky loans. The case went to trial, and a jury found that the directors were negligent (and thus liable) in approving four of the ten loans. The District Court refused to instruct the jury on apportionment, so the negligent directors were held jointly and severally liable for the damages.

On appeal, the directors make three arguments. First, they claim that the District Court erred when it refused to instruct the jury on apportionment. Second, they argue that a director can only be on the hook for a loan if he attended the meeting where the loan was presented and affirmatively voted to approve that loan. Thus, they say the District Court erred by not instructing the jury accordingly. Third, they argue that the District Court abused its discretion when it did not allow

2

them to introduce evidence about the Great Recession, which the directors claim was an intervening cause that should absolve them of liability.  We reject all three arguments and affirm.

## I.[1]

### A.

Under the Bank's policy, the Directors' Loan Committee had to approve all loans above a certain amount, and it did so at weekly meetings.  The Directors' Loan Committee was made up of several members, but a quorum of three voting members could approve a loan.[2]  Despite this quorum-approval policy, any one member of the Committee could veto a loan all on his own—even if he didn't attend the meeting.  Thus, if a member wanted to kill a loan, he had two options. He could veto the loan before it was discussed and voted on at a meeting, or he could attend the meeting and cast his no vote there.  By contrast, if a member neither objected before the meeting nor attended the meeting and voted against a loan, he effectively voted to approve it.  Even if he didn't attend the approval

---

[1] At this point, the facts and procedural history of this case have been explained in three different opinions.  *See FDIC for Buckhead Cmty. Bank v. Loudermilk*, 887 F.3d 1250, 1251 (11th Cir. 2018) (per curiam), *certified questions answered sub nom. FDIC v. Loudermilk*, 826 S.E.2d 116 (Ga. 2019); *FDIC v. Loudermilk*, 761 S.E.2d 332, 334 (Ga. 2014).  Thus, we set only the facts and procedural history that are most relevant to our analysis.

[2] According to the Bank's policy, the quorum of three voting members must include at least (1) one outside director and (2) one member who was the president, executive vice president/senior lender, or executive vice president/senior credit officer.

meeting and cast a yes vote on the record, he still approved the loan by not using his veto power at any point during the approval process.

The approval process itself went something like this. The lending officer originated a loan and compiled a packet of information about it. The packet included a credit memorandum and a loan submission sheet. As it turns out, the information in the loan packets wasn't always reliable. For example, one of the loans at issue was a loan to buy land; the loan packet for this loan included an appraisal of the land, and the appraisal assumed the land had been rezoned. But this was nothing more than an assumption because the land was not rezoned at the time of the appraisal.[3] A packet for another loan included irrelevant information about the borrowers (such as country club membership) but left out information related to credit-worthiness. After the lending officer compiled the packet, he sent it to the members of the Directors' Loan Committee a day or so before the Committee met.

At the Loan Committee meeting, the lending officer presented the loan to the Committee members who were present. There could have been as many as eight members present or as few as three due to the quorum-approval policy.

B.

---

[3] Speaking of appraisals, the directors also approved some loans without *any* appraisals for the loans' collateral.

4

After the Bank closed and the FDIC took over as receiver, the FDIC sued the former directors.[4]  The FDIC alleged that the directors rubber stamped risky loans without properly researching them; the directors were then uninformed when they approved these loans, the FDIC said.  As a result, the FDIC argued that the directors were negligent and grossly negligent in approving ten risky loans.  The FDIC also alleged that the directors "pursued a common plan or design, or otherwise acted in a common or concerted manner."

The directors—jointly represented by the same lawyers—moved to dismiss, arguing that Georgia's business judgment rule bars claims for ordinary negligence. The District Court certified that question to the Supreme Court of Georgia, and the Supreme Court held that the business judgment rule bars some but not all claims against directors.  *FDIC v. Loudermilk*, 761 S.E.2d 332, 338 (Ga. 2014) ("*Loudermilk I*").  Specifically, it held

> the business judgment rule . . . forecloses claims against . . . directors that sound in ordinary negligence when the alleged negligence concerns only the wisdom of their judgment, but it does not absolutely foreclose such claims to the extent that a business decision did not

---

[4] The FDIC sued nine defendants total.  It sued all the members of the Directors' Loan Committee, which was made up of either seven or eight members.  There's no dispute that these seven defendants were members of the Committee: Aldredge, Allman, Cosgray, Douglass, Loudermilk, Margeson, and Martindale.  (Before trial, Margeson's estate settled with the FDIC and was dismissed from the case.)  And it's clear that defendant Holden was *not* a member of the Committee; he was involved because he presented half of the loans at issue to the Committee. But it's unclear whether defendant Overall was a member of the Committee.  Before trial, the parties filed a list of stipulated facts, and Overall was not listed as a member.  But at trial, he testified that he was a voting member of the Committee.

> involve "judgment" because it was made in a way that did not
> comport with the duty to exercise good faith and ordinary care.

*Id.*

The case moved through discovery and pretrial motion practice. Two of the District Court's pretrial rulings are relevant on appeal. The first relates to one of the directors' affirmative defenses. After discovery, the FDIC moved for summary judgment on the directors' sixth affirmative defense, which alleged that intervening causes or events caused the alleged damages. In response, the directors withdrew the affirmative defense, and the District Court entered an order saying it would prevent the directors from introducing evidence related to the withdrawn defense. Later, the directors proposed introducing evidence on intervening cause, and the Court granted the FDIC's pretrial motion to exclude it.

The second relevant pretrial ruling relates to the directors' proposed jury instructions. Before trial, the directors asked for a jury instruction that would require the jury to apportion fault by percentage for any director that the jury found was negligent and thus liable. The directors also asked for an instruction that said a director could be held liable for a loan only if he attended the meeting where that loan was presented and approved. The District Court found that apportionment did not apply and sustained the directors' objection to that instruction. The Court did not make a pretrial ruling on the proposed attendance instruction.

The case went to trial, and the evidence reflected the approval process that we described above. Although each member of the Directors' Loan Committee had complete power to veto a loan, none of them used this power to kill any of the loans at issue here. At the close of evidence, the District Court held an instruction conference. The directors again asked for the apportionment instruction and the attendance instruction, and the Court rejected both. The jury found that the directors were negligent (and thus liable) in approving four of the ten loans.[5] The District Court entered judgment and did not apportion the nearly $5 million in damages.

The directors appealed and challenge three of the District Court's decisions: (1) its decision rejecting their proposed apportionment instruction, (2) its decision rejecting their proposed attendance instruction, and (3) its decision excluding evidence about the Great Recession.

II.

---

[5] The jury found that all seven defendants who were obviously members of the Directors' Loan Committee were liable for all four loans, even if the loans were approved at meetings they didn't attend. By contrast, the jury found that Holden—remember, he wasn't a member of the Committee—was liable for just one loan: the one of the four that he presented to the Committee. What's interesting is that the jury did the same thing with Overall and found that he was liable for the one loan that was approved at a meeting he attended. This is odd because he testified that he was a member of the Committee. Perhaps this part of the verdict had something to do with the conflicting evidence on whether Overall was in fact a member of the Committee. *See supra* note 4. Or perhaps it had something to do with Overall's status as an officer, not a director.

"We review jury instructions *de novo* to determine whether they misstate the law or mislead the jury" and prejudice the objecting party. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1283 (11th Cir. 2008) (alteration omitted) (quoting *United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008)). "We review a district court's evidentiary rulings for abuse of discretion." *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1349 n.7 (11th Cir. 2007).

We take up each of the directors' arguments separately.

A.

First, we consider whether the jury instructions—which did not allow the jury to apportion damages based on percentage of liability—misstated Georgia law or misled the jury. We hold that it would have been impossible for the jury to divide fault among the liable directors. Therefore, Georgia's apportionment statute did not apply in this case, and the jury instructions neither misstated Georgia law nor misled the jury.

As relevant here, Georgia's apportionment statute says this: "Where an action is brought against more than one person for injury to . . . property, the trier of fact . . . shall . . . apportion its award of damages among the persons who are liable according to the percentage of fault of each person." O.C.G.A. § 51-12-33(b). Whether the apportionment statute applied was a major issue both before and during trial. If it applied, the FDIC could not pursue joint and several liability.

8

If it did not apply, however, the FDIC could pursue joint and several liability and potentially hang the entire judgment on the liable director who was most able to pay.

As the parties were preparing for trial, both sides submitted proposed verdict forms. The directors' proposed verdict form required the jury to assign a percentage of fault to each liable defendant, while the FDIC's proposed verdict form took an all-or-nothing approach and didn't allow the jury to assign fault percentages. After the FDIC objected to the directors' proposed verdict form, the District Court took up the apportionment issue the week before trial.

Without clear guidance from the Georgia courts, the District Court held that the apportionment statute did not apply. *FDIC v. Loudermilk*, No. 1:12-CV-4156-TWT, 2016 WL 7364770, at \*2–3 (N.D. Ga. Oct. 6, 2016) (order denying apportionment). The Court looked to another Georgia statute that deals with director liability and concluded that "Georgia law presumes that the directors of a bank are acting in concert." *Id.* at \*3.[6] The District Court explained that the

---

[6] The subsection of the statute that the District Court looked to in reaching its conclusion on presumed concerted action says this:

> A director of a bank or trust company who is present at a meeting of its board of directors at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof or shall forward such dissent by registered or certified mail or statutory overnight delivery to the secretary of the bank or trust company within 24 hours after the

directors are "tortfeasors acting in concert," and it correctly pointed out that

Georgia case law says apportionment statutes don't apply to concerted action. *Id.*

But even putting this legal barrier to apportionment aside, the District Court

concluded that the jury would be left guessing if it tried to apportion liability. The

Court noted that the directors' defense was that they "collectively did not breach

any duty to the Bank." *Id.* Based on this defense, and the directors' own

concession that they would "offer no evidence or argument as to the relative

liability of the individual" directors, the Court found that the jury would have no

reasonable basis for apportioning liability among the liable directors. *Id.* Thus, the

District Court held that apportionment did not apply. *Id.*

At the instruction conference, the directors again requested their proposed

verdict form, and the Court again denied it:

> I don't think there's any basis based on the evidence that was
> presented at trial for assigning to any individual Defendant any
> percentage basis of liability. They either approved the loans or they
> didn't. If the jury finds they did not act with due diligence in
> approving the loan, they're liable. If they didn't, they're not liable.
> But there's no basis for saying one director was 30 percent liable and
> another director was 40 percent liable for making the exact same
> decision based on the exact same information.

---

adjournment of the meeting. Such right to dissent shall not apply to a director
who, being present at the meeting, failed to vote against such action.

O.C.G.A. § 7-1-494(b).

Fast forward to the appeal, and the apportionment issue is again front and center. Each party had an argument to explain why the apportionment statute either does or does not apply—as a matter of law. Specifically, the FDIC argued that the statute doesn't apply because the word "property" as it is used in the apportionment statute doesn't mean purely pecuniary property, or intangible property. (As it turns out, the FDIC was wrong about this.) But even if "property" does mean purely pecuniary property, the FDIC said, the apportionment statute still doesn't apply because Georgia common law imposes joint and several liability on tortfeasors who act in concert. (The FDIC got this one right.)

The directors of course argued that "property" means both tangible and intangible property, and they said the common-law rule imposing joint and several liability doesn't apply because they didn't act in concert. To resolve these arguments, we needed to decide a few issues of state law that Georgia courts had not yet decided. Rather than taking our best *Erie* guess, we certified three questions to the Supreme Court of Georgia. *See FDIC for Buckhead Cmty. Bank v. Loudermilk*, 887 F.3d 1250, 1255 (11th Cir. 2018) (per curiam), *certified question answered sub nom. FDIC v. Loudermilk*, 826 S.E.2d 116 (Ga. 2019).

**Question 1:** "Does Georgia's apportionment statute . . . apply to tort claims for purely pecuniary losses against bank directors and officers?" *FDIC v. Loudermilk*, 826 S.E.2d 116, 119 (Ga. 2019) ("*Loudermilk II*").

11

The Court rejected the FDIC's tangible-intangible argument and said yes, the apportionment statute does apply to tort claims for purely pecuniary losses against bank directors and officers.  *Id.* at 119, 121.  Had the Court said no to this question, our work would be finished.  Joint and several liability would apply as a matter of law.  But it didn't say that, so we move onto the next question.

**Question 2:** "Did Georgia's apportionment statute . . . abrogate Georgia's common-law rule imposing joint and several liability on tortfeasors who act in concert?"  *Id.* at 119.

The Court said yes, but "with an important caveat: concerted action survives the apportionment statute, but only insofar as it was traditionally understood at common law within the context of torts."  *Id.* at 124.  The Court fleshed out how concerted action was traditionally understood at common law and how that understanding squares with the apportionment statute.  Two of its points are worth highlighting.

First, the Court noted that "[c]oncerted action for torts was . . . born out of a legal theory of mutual agency in which the acts (and ultimately the liability) of one wrongdoer were imputed as a matter of law to another who was part of the same 'joint enterprise.'"  *Id.* at 125 (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 52, at 346 (5th ed. 1984)).  There doesn't need to be an "[e]xpress agreement" to partake in the joint venture.  *Id.* (quoting Keeton, *supra*, § 46, at

12

323).  A "tacit understanding" is enough, so long as each alleged wrongdoer

"proceed[ed] . . . with negligence."  *Id.* (quoting Keeton, *supra*, § 46, at 323, 324).

Second, the Court explained why the apportionment statute does not apply

when defendants act in concert: it's because fault is not divisible.  The

apportionment statute's "touchstone inquiry," the Court said, is "whether fault is

divisible."  *Id.* at 129.[7]  But under the common-law understanding of concerted

action, "the act (and thus the fault) of one person is *imputed* to all other members

of the same joint enterprise."  *Id.* at 127 (emphasis added).  "And where the fault of

one person is legally imputed to another person who is part of the same joint

enterprise, [the Court could not] say that there is a legal means of dividing fault

'among the persons who are liable.'"  *Id.* (quoting O.C.G.A. § 51-12-33(b)).

Importantly, the Court also acknowledged that there may be other legal

theories, separate from concerted action, that prevent dividing fault as a matter of

law.  *Id.* at 129 n.20.  And, the Court said, "There may also be factual

circumstances that impede a division of fault between persons, though [it was]

considerably more skeptical that will be so."  *Id.*

Had the Court said yes to this question and held that the apportionment

statute abrogated common law joint and several liability—with no exceptions—

---

[7] As the Court explained, this is because the apportionment statute—which allocates damages based on a person's percentage of fault—"necessarily presumes that fault must be divisible among 'persons' for apportionment to apply in the first place."  *Id.* at 126.

13

again, our work would be finished.  Apportionment would apply as a matter of law.
But the Court didn't say that, so we move onto the final question.

**Question 3:** "In a negligence action premised upon the negligence of individual board members in their decision-making process, is a decision of a bank's board of directors a 'concerted action' such that the board members should be held jointly and severally liable for negligence?"  *Id.* at 119.

The Court didn't answer this question.  It said that "[w]hether a plaintiff adequately has pleaded and established the existence of a concerted action such that defendants should be held jointly and severally liable depends on the legal theories and facts presented in each particular case."  *Id.* at 129.  It did "not engage in" or "take a position on" this "record-intensive evaluation."  *Id.*

\*　　\*　　\*

So, where does this leave us?  We now know that the apportionment statute is the default rule because it applies to tort claims for purely pecuniary losses against bank directors.  But we also know that the apportionment statute doesn't apply to situations where it's impossible to divide fault among the liable defendants.  It's impossible to divide fault when the defendants acted in concert.  And there might be other times when it's impossible to divide fault based on the legal theories or factual circumstances.

14

Whether a jury must apportion damages depends on the particular case. Thus, our answer to the question whether the instructions (which didn't allow apportionment) misstated the law or misled the jury does not turn on a pure legal question. So, to answer the instruction question, we ask whether the evidence at trial supported an apportionment instruction.[8] *See Trotman v. Velociteach Project Mgmt., LLC*, 715 S.E.2d 449, 456–57 (Ga. Ct. App. 2011) ("A trial court does not err in refusing to give a requested charge which is . . . not authorized by the evidence." (alteration omitted) (quoting *Keogler v. Krasnoff*, 601 S.E.2d 788, 792 (Ga. Ct. App. 2004))). We hold that the evidence did not support an apportionment instruction, and the District Court was right to deny it. Thus, the jury instructions did not misstate the law or mislead the jury.

The "touchstone inquiry" for the apportionment statute is whether fault is divisible. *Loudermilk II*, 826 S.E.2d at 129. Here, the evidence showed that it's impossible to divide fault among the liable directors. The decision to approve a

---

[8] We are mindful the District Court ruled before trial that the apportionment statute did not apply. *Loudermilk*, 2016 WL 7364770, at *2–3 (order denying apportionment). So, there's an argument (though the directors don't actually make it) that the directors tried the case a certain way, knowing that the District Court would not allow apportionment. And because of that, it's improper for us to now ask whether the evidence supported an apportionment instruction. After all, the directors had no incentive to put on evidence that would have supported apportionment. This argument does not concern us. As we explain below, the evidence doesn't support apportionment because of the nature of the group decision (all must explicitly or implicitly approve) and because any one member could have killed a loan. That was undisputed. It was also undisputed that no liable director exercised this veto power and thus explicitly or implicitly approved all four loans. None of this evidence would change based on trial strategy.

loan was a group decision; it required the consent—either implicit or explicit—from all members of the Directors' Loan Committee. Indeed, a loan was approved only if every member chose not to exercise his veto power. That is, one member standing alone could kill a loan, but it took every member to approve one. And each director had access to the same information—the same loan packet—when he decided to approve the loan.

On top of that, the quorum-approval policy essentially allowed the Committee members to act as agents for each other. By voting yes, the quorum of three effectively spoke for the absent members. And the absent members, by not exercising their veto power, allowed the quorum to speak for them.

Because the decision to approve a loan was a group decision, a jury could not assign percentages of fault to individual directors. Any percentage would be arbitrary because the jury would be left speculating. And Georgia courts have said that "liability cannot rest upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence." *Gwinnett Prop., N.V. v. G+H Montage GmbH*, 453 S.E.2d 52, 56 (Ga. Ct. App. 1994) (alteration omitted) (quoting *Cohen v. Hartlage*, 348 S.E.2d 331, 334 (Ga. Ct. App. 1986)).

16

The directors ask us to remand this case and to order a retrial based on two independent reasons.[9]

First, the directors argue that *Loudermilk I* requires a jury to determine director liability on a director-by-director basis, not on a group basis. To do so, the directors say, the jury must evaluate each individual director's decision process and decide whether the director was negligent based on his process. We'll assume they're right about that.

The directors take their argument a step further. Because *Loudermilk I* requires a negligence analysis for each individual person, the directors conclude that *Loudermilk I* "assumes that directors . . . can vary in their levels of good faith and due care (and thus in their comparative liability)." They lost us with the parenthetical.

We'll assume a jury could find that some director defendants are liable, while others are not. From that, however, it does not follow that fault is necessarily divisible among the directors that are in fact liable. This is especially true when all of the liable directors followed the same defective process, like the directors here. And it's especially true if each liable director's vote was needed to make the decision, again like the directors here. The directors' argument rests on a

---

[9] After the Supreme Court of Georgia answered our certified questions, we required the parties to submit simultaneous letter briefs that explained how they thought this appeal should be decided.

faulty premise.  On top of that, the Supreme Court of Georgia did not weigh in on

apportionment and comparative liability in *Loudermilk I*.  The question before the

Court in *Loudermilk I* was whether Georgia's business judgment rule precludes

claims based on ordinary negligence.  761 S.E.2d at 334.  This probably explains

why the directors don't actually cite any page number in *Loudermilk I* to support

their conclusion that *Loudermilk I* assumes comparative liability.

Second, the directors argue that a retrial is necessary because the jury was

not instructed on concerted action.  In fact, the FDIC never even requested an

instruction on concerted action.  This is probably because, as we explained above,

the District Court thought "Georgia law presumes that the directors of a bank are

acting in concert."  *Loudermilk*, 2016 WL 7364770, at *3 (order denying

apportionment).  In answering our certified questions, the Supreme Court of

Georgia strongly suggested that concerted action is a jury question.  *See, e.g.*,

*Loudermilk II*, 826 S.E.2d at 128 n.18 ("In *Nottingham*, we concluded that

evidence of one defendant's tortious conduct, 'individually or in concert with'

another defendant, 'required submission to the jury.'" (quoting *Nottingham v.

Wrigley*, 144 S.E.2d 749, 751–52 (Ga. 1965))); *id.* (comparing concerted action to

civil conspiracy and noting that "it 'is usually within the province of the jury to

draw . . . inferences' about whether a conspiracy exists" (alteration in original)

(quoting *Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Comm. Tr.*, 780 S.E.2d 311, 318 (Ga. 2015))).

And the directors are right that the jury was not instructed—and thus made no finding—on concerted action.  The Supreme Court of Georgia acknowledged as much.  *See id.* ("In this case, it does not appear that the jury was permitted to decide whether the former directors . . . acted in concert or not.").  So, the directors are right that concerted action is generally a jury question, and they're right that the jury in this case made no finding on concerted action.  But they're wrong to say that these two points require a retrial.

A retrial is unnecessary because our holding—that apportionment wasn't supported by the evidence—does not rest on the premise that the directors acted in concert.  Instead, we looked to the nature of the loan approval policy, and the way that it was executed, and we concluded that fault was not divisible.  It's true that one way to show fault is indivisible is by showing the liable defendants acted in concert.  *Id.* at 127.  But, as the Supreme Court of Georgia highlighted, concerted action isn't the only route to showing that fault is indivisible.  *Id.* at 129 n.20.  And because our apportionment holding didn't rest on concerted action, the District Court's erroneous conclusion that Georgia law presumes the directors acted in concert was harmless.  *See* Fed. R. Civ. P. 61; *Romero v. Drummond Co.*, 552 F.3d 1303, 1324 (11th Cir. 2008) ("[Rule 61] embodies the 'well-settled rule that an

19

erroneous ruling which relates to the substantial rights of a party is ground[s] for reversal unless it affirmatively appears from the whole record that it was not prejudicial.'" (quoting *McCandless v. United States*, 298 U.S. 342, 347–48, 56 S. Ct. 764, 766 (1936))); 1 Charles Alan Wright et al., *Federal Practice and Procedure* § 2883 (3d ed. 2012) ("Plainly Rule 61 teaches that the proceedings are not to be disturbed because of an error that prejudiced no one.").[10]

Having disposed of the merits, there's one thing we can't leave unsaid. This case has been infected with a conflict of interest from the moment the directors decided before trial to pursue an apportionment theory of liability.[11] If apportionment did in fact apply, it would be in each director's best interest to point his finger at the other directors and to downplay his own fault. To basically say, "It was them, not me!" This conflict would be most obvious during closing

---

[10] If the directors are really worried about one wealthy director getting stuck paying the entire judgment, they shouldn't be. The Supreme Court of Georgia pointed out that when joint and several liability applies, contribution might also. *Loudermilk II*, 826 S.E.2d at 129. And "[t]he cases permitting contribution have allowed it to be enforced on a pro-rata basis predicated upon the number of joint tort-feasors in the case, rather than on a basis of relative fault." *Id.* at 128 n.19 (quoting *Union Camp Corp. v. Helmy*, 367 S.E.2d 796, 798 n.1 (Ga. 1988)). Here, pro-rata contribution based on the number of liable directors makes perfect sense. Each director's vote carried the same weight. Each director had the power to veto and didn't use it. Thus, they are equally responsible, which is consistent with pro-rata contribution. Of course, this observation doesn't mean that apportionment applies. The apportionment issue turns on whether fault—not injury or damages from the injury—is divisible. *See id.* at 125–26 (explaining that the "analytical touchstone for damages analysis" is "whether *fault* is divisible").

[11] *See* Model Rules of Prof'l Conduct r.1.7(a)(1) (Am. Bar Ass'n 2018) (explaining that a concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client").

argument, when the group's lawyer would have to pick and choose among the individual directors in crafting his apportionment argument. No doubt, the lawyer would make director-specific arguments in telling the jury what percentage of fault it should assign to each liable director. This would necessarily pit each director against the others. And even now, on appeal, there's still a conflict of interest. If we gave the directors what they ask for—a new trial—each director would have to hire his own lawyer for the reasons we've just explained. And it would likely cost each director more to hire his own lawyer than it does for him to pay his share (if he pays any share at all) of the joint representation. Thus, it seems unlikely that each director really does want apportionment to apply.

## B.

Next, we consider whether the jury instructions—which allowed the jury to hold a director liable for a loan that was approved at a meeting he didn't attend— misstated Georgia law or misled the jury. We hold that there was an evidentiary basis for the jury to conclude that a director was negligent in his decision-making process for a loan even if he didn't attend the approval meeting for that loan. As we explained above, even if a director didn't attend the approval meeting and affirmatively vote for a loan, he still approved it by sitting on his veto power. Thus, the jury instructions neither misstated Georgia law nor misled the jury.

The directors' argument that an individual director could be held liable for a loan only if he attended the meeting where the loan was approved fails for two reasons.

First, this argument misunderstands the process the directors used in approving loans and the implications that flowed from their process. The directors argue that some of them were held liable for loans even though they "did not participate in the decision approving the loan." This assumes that the entire decision-making process for each loan took place at the approval meeting. But that's just not true. As we explained above, even members who didn't attend a meeting and affirmatively vote for it still played a vital role in that loan's approval. This is because each Committee member had absolute veto power, and every time a member failed to use that veto power, he implicitly stamped his approval on the loan and allowed it to move through the process.

Second, the directors' we-must-attend-the-meeting-to-be-held-liable argument misunderstands the interplay between the business judgment rule and director liability. As the Supreme Court of Georgia explained in *Loudermilk I*, the business judgment rule protects directors from negligence claims that challenge "only the wisdom of their" decisions. 761 S.E.2d at 338. But the business judgment rule does not protect directors from negligence claims that challenge the

22

*way* a decision was made because the decision-making process "did not comport with the duty to exercise good faith and ordinary care." *Id.*

Approval meeting attendance isn't the litmus test for deciding whether a director exercised his duties in good faith. It's not as if a member faithfully discharged his duties just by showing up for a meeting. Nor was every absent member negligent based solely on his absence. The directors argue that attendance is an all-or-nothing proposition—those who were absent, they say, are automatically off the hook. But there's nothing in the record that supports their theory. Instead, based on the FDIC's theory of the case, attendance was a symptom of the disease, and the disease was a lackadaisical and uninformed approach to approving loans. Indeed, members of the Committee received loan packets before the meeting, and they could have vetoed a loan before it came up at a meeting. Thus, the approval meeting itself was not the entire decision-making process, and poor attendance was just one example of the directors' lackadaisical approach.

The directors say the District Court created "a new duty of perfect attendance" by allowing the jury to hold members liable for loans that were approved at meetings they didn't attend. For the reasons we just explained, this case does not stand for the proposition that directors are liable for every loan that was approved at meetings they didn't attend. The jury instructions did not list the

23

challenged loans, ask whether each director attended a loan's approval meeting, and condition liability on that attendance.  Instead, the instructions asked whether the directors exercised the same diligence and care as directors of a similarly situated bank would be expected to exercise.  So, the District Court did not create a duty of perfect attendance.

Next, the directors argue that Georgia law requires a director to be present at a meeting to face liability for any action taken at the meeting.  To support this argument, they point to a Georgia statute that explains quorum and voting rules. The subsection they rely on explains that Georgia law assumes any director who attends a meeting assents to an action taken at the meeting—even if he didn't affirmatively vote for it—unless he does one of three things.  *See* O.C.G.A. § 14-2-824(d) ("A director who is present at a meeting of the board of directors or a committee of the board of directors when corporate action is taken is deemed to have assented to the action taken unless [he does one of three things] . . . .").

This subsection can't begin to support the weight the directors put on it.  The subsection explains the legal implications of a situation where a director attends a meeting, refuses to affirmatively vote for an action, and doesn't object or abstain in one of the three ways laid out in the statute.  The subsection doesn't even mention absent directors.  A different subsection is the only part of the statute that comes close to mentioning absent directors, and that subsection says an action taken by a

24

majority of the quorum is considered an act by the entire board. *See id.* § 14-2-824(c). If anything, this cuts against the directors' argument.

We hold that the instructions neither misstated Georgia law nor misled the jury by allowing the directors to be held liable for loans that were approved at meeting they didn't attend.

C.

Finally, we take up the evidentiary issue: did the District Court abuse its discretion by excluding evidence related to the Great Recession? We hold that it did not because it was enforcing its earlier—unchallenged—ruling.

The context surrounding the District Court's decision to exclude this evidence is a little unusual. Because this context factored into the Court's decision, we begin there.

The directors raised "intervening causes and/or events that were not within [their] control" as an affirmative defense in their Answer. After some discovery, the FDIC moved for summary judgment on several of the directors' affirmative defenses, including the intervening-cause defense. Among other things, the FDIC argued that the intervening-cause defense (which it understood to be the Great Recession) had no support in the record. The defense had no support in the record, the FDIC claimed, because the directors set in motion the events that caused the Bank's loans when they negligently approved the loans.

25

The directors responded and withdrew the intervening-cause defense (and others).  Thus, in their view, the motion for summary judgment was moot. Although they withdrew several defenses, the directors

> expressly reserve[d] their right . . . to present evidence at trial relating to the matters and issues raised by the withdrawn affirmative defenses to the extent necessary to demonstrate that the FDIC[] ha[d] not and [could not] carry its affirmative burden of proof as to any element of its *prima facie* case.

The FDIC replied and argued its summary judgment motion was not moot. Specifically, it asked the Court to do two things: (1) to enter summary judgment in its favor on the intervening-cause defense and (2) to treat its statement of undisputed facts as "established" under Rule 56(g) of the Federal Rules of Civil Procedure because the directors did not dispute them.[12]

This prompted the directors to file a surreply where they argued that the Court should not treat the FDIC's undisputed facts as "established" under Rule 56(g).  They pointed out that Rule 56(g) was triggered only if the Court did not grant all relief requested in the summary judgment motion, and, they argued, they conceded that the Court should give the FDIC all the relief it requested in its motion.

---

[12] Rule 56(g) says this: "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief— that is not genuinely in dispute and treating the fact as established in the case."  Fed. R. Civ. P. 56(g).

The District Court denied the FDIC's motion for summary judgment as moot. Importantly, because the directors withdrew their intervening-cause affirmative defense, the Court ruled that they would "be prohibited from presenting evidence as to [that defense] at trial."

As the directors were preparing for trial, they either overlooked or disregarded the Court's evidentiary ruling. Indeed, when the parties submitted their consolidated pretrial order, directors noted that they planned to make arguments and introduce evidence related to intervening cause. The FDIC filed a motion in limine and asked the Court to exclude the evidence because evidence about intervening cause was "directly contrary" to the Court's earlier ruling. They also argued that the evidence should be excluded because it was irrelevant. The directors responded and contested the relevance argument only—they said nothing about the Court's earlier evidentiary ruling.

You can probably guess how the District Court ruled: it granted the motion in limine because the directors "never challenged t[he] portion of" its previous order that said the directors would be prohibited from presenting evidence related to their withdrawn affirmative defenses. Alternatively, it found that the proposed evidence was irrelevant.

Now, the directors say they withdrew the intervening-cause defense because it wasn't really an affirmative defense.[13]  Instead, it was the FDIC's burden to prove causation as part of its *prima facie* case, they claim.  So, the directors withdrew the defense because it was not their burden to disprove causation.  Although we don't condone this kitchen-sink approach to pleading and affirmative defenses, we'll take the directors at their word.

The directors have explained why they withdrew the defense, but they have not explained why they never challenged the Court's evidentiary ruling.  All they tell us is that "[a]lthough not apparent at the time, the [D]istrict [C]ourt mistook the point of [their] withdrawal."  Then, when the FDIC moved in limine to exclude the evidence, the Court held their withdrawal against them, the directors say.  But that's not quite right.  The District Court granted the FDIC's motion in limine because the directors contested only the relevance argument.  Indeed, the directors said nothing about the Court's earlier evidentiary ruling.  And even now, they still don't explain why they failed to challenge the earlier ruling.

The District Court excluded the evidence because the directors never challenged its earlier evidentiary ruling.  In that earlier evidentiary ruling, the

---

[13] According to the directors' lawyers, defendants frequently include in their answers affirmative defenses that really aren't affirmative defenses.  Defendants do this, apparently, "out of an abundance of caution."  Indeed, the directors' lawyers tell us, this behavior is "common today."  Before the directors' lawyers knowingly allege another self-proclaimed frivolous affirmative defense, we suggest they read Rule 11 of the Federal Rules of Civil Procedure.

Court said that it would prohibit the directors from introducing this evidence. Because the Court was enforcing its unchallenged ruling, we cannot say that it abused its discretion. *See Abuse of Discretion*, *Black's Law Dictionary* (11th ed. 2019) (defining abuse of discretion as "[a]n appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence").

## III.

The judgment of the District Court is

**AFFIRMED.**

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 22, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  16-17315-EE
Case Style:  Federal Deposit Insurance Cor v. R. Loudermilk, Sr., et al
District Court Docket No:  1:12-cv-04156-TWT

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellants.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Elora Jackson, EE at (404) 335-6173.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs